UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THEODORE SMITH  (#313084)

VERSUS                                                    CIVIL ACTION

LT. GABRIEL HEBERT, ET AL                   NUMBER 08-30-BAJ-DLD

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 26, 2011.

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


THEODORE SMITH  (#313084)

VERSUS                                                      CIVIL ACTION

LT. GABRIEL HEBERT, ET AL                     NUMBER 08-30-BAJ-DLD


MAGISTRATE JUDGE'S REPORT

Before the court is the parties' motions for summary judgment.  Record document

numbers 191 and 208.[1]

Pro se plaintiff, while confined at Louisiana State Penitentiary, Angola, Louisiana,

filed this action pursuant to 42 U.S.C. § 1983 against Todd Barrere, Kevin Benjamin,

Michael Laborde, Irving Stammreich, Harold Sterling, Louis Stroud, Rachel Taylor, James

Tillman and David Voorhies.[2]  Plaintiff alleged that he was retaliated against for filing

---

[1] Plaintiff captioned his pleading as Plaintiff's Objection and Cross-Motion to Defendant's Motion for Summary Judgment Filed Pursuant to FRCP 56(C).  The court will treat the plaintiff's pleading as both a motion for summary judgment and an opposition to the defendants' motion for summary judgment.

[2] Plaintiff also named as defendants Gabriel Hebert, Maj. Chad Darbonne, Capt. B. (Boris) Whitaker, Lt. Chad Hukin, Warden Burl Cain, Richard L. Stalder, Angela R. Day, and Maj. Timothy Leonard.  Plaintiff's claims that he was subjected to an excessive use of force and that the excessive force was applied in retaliation for filing an administrative grievance were previously dismissed for failure to exhaust available administrative remedies pursuant to 42 U.S.C. § 1997e(a).  Record document number 79.   All of the plaintiff's remaining claims were dismissed except for the plaintiff's  equal protection claim against Kevin Benjamin and his retaliation claims against Michael Laborde, Rachel Taylor, Todd Barrere, David Voorhies, Harold Sterling, James Tillman, Louis Stroud and Irving Stammriech and the court declined to exercise supplemental jurisdiction over the plaintiff's

(continued...)

administrative grievances and he was not permitted to attend vocational school in violation of his equal protection rights.

Plaintiff moved for summary judgment relying on a copy of the disciplinary report issued to Shadrick Reed on June 4, 2007, a copy of a disciplinary report issued to him on June 5, 2007, a copy of Investigative Services Lab Worksheet on contraband charges issued to Shadrick Reed, a copy of Reed's conduct record and portions of Reed's master prison record, answers to interrogatories and admissions propounded to defendant Michael Laborde, copies of confidential informant sheets related to June 5, 2007 disciplinary charges against him, the affidavit of Shadrick Reed dated March 23, 2009, answers to interrogatories and admissions propounded to Louis Stroud, a copy of a disciplinary report issued to him on July 6, 2007 and a copy of the letter which was the subject of the disciplinary report, a copy of the disciplinary board appeal record related to the July 6, 2007 disciplinary report, answers to interrogatories and admissions propounded to Rachel Taylor, the declaration of Jeremy Guidry, responses to interrogatories and admissions propounded to Harold Sterling, responses to interrogatories and admissions propounded to Irving Stammriech, a copy of The Corrections Services Employee Manual, a copy a disciplinary report issued to him on December 13, 2007, responses to interrogatories and admissions propounded to David Voorhies, Jr., responses to interrogatories and admission propounded to Todd Barrere, responses to interrogatories and admissions propounded to James Tillman, copies of lockdown review summaries, a copy of the plaintiff's conduct report, responses to interrogatories and admissions propounded to Kevin Benjamin, the

---

²(...continued)
state law and this action. Record document number 95.

First Step Response of Administrative Remedy Procedure (hereinafter ARP) LSP-2007-1208, a copy of Department Regulation No. B-08-010, the declaration of Tory Boatner and the plaintiff's affidavit[3].

Defendants moved for summary judgment relying on a statement of undisputed facts, the affidavits of Todd Barrere, Kevin Benjamin, Michael Laborde, Harold Sterling, Irving Stammreich, Louis Stroud, James Tillman, David Voorhies, Jr., and Rachel Taylor, a copy of LSP Penitentiary Directive No. 09.042, copies of correspondence by the plaintiff on April 16, 2009, a copy of the plaintiff's vocational school transcript, copies of investigative reports, a copy of Shadrick Reed's master prison record, a copy of disciplinary board appeal number LSP-2007-0478-W, copies of the plaintiff's inmate location sheets, portions of the plaintiff's master prison record, portions of disciplinary appeal board numbers LSP-2008-0039-W and LSP-2008-0058-W, copies of disciplinary reports issued to the plaintiff on June 5, July 6 and December 13, 2007, copies of the plaintiff's personal property inventory forms, a copy of disciplinary board appeal number LSP-2007-0493-W, a copy of a letter written by the plaintiff dated July 6, 2007, excerpts from the prison rule book, and copies of plaintiff's requests for administrative remedies in ARPs LSP-2007-1208, LSP-2007-1695, LSP-2007-2854 and LSP-2007-3688.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the moving party meets the initial burden of showing that there is no genuine dispute of material fact, the burden shifts to the nonmoving party to produce

---

[3] Record document number 210.

evidence or designate specific facts showing the existence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 2252-53 (1986); Fed.R.Civ.P. 56(c); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc). The nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Texas Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004). The trial court may not weigh the evidence or make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).

## I. Factual Background

Plaintiff alleged that in 2006 he was issued a Rule No. 30 H disciplinary report accusing him of coercing an employee into giving him a pair of cleats. A Rule No. 30 H disciplinary report prohibits bribing, influencing or coercing anyone to violate institutional policies, procedures, rules and state or federal laws, or attempting to do so. Plaintiff contends that the disciplinary report was false and was issued in retaliation for the plaintiff's having knowledge of wrongdoing by correctional officers. Plaintiff alleged that although he was not guilty of the disciplinary infraction, he pled guilty to the disciplinary charges and was sentenced to a living quarters change and also was removed from vocational school. Months later he made repeated requests to be readmitted to the vocational school, and when officials denied his requests, he filed ARP LSP-2007-1208 on April 9, 2007, against Warden Benjamin, Angela Day, Gus Watson and unidentified compound security. Plaintiff alleged that Warden Benjamin exerted pressure on him to dismiss the ARP and when he refused, he was thereafter subjected to several acts of retaliation by other correctional officers.

## II. Claims Barred by 42 U.S.C. § 1997e(e)

Defendants argued that the plaintiff's damages claims are barred by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(e) because the plaintiff failed to allege that he sustain a physical injury.

The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The application of this provision turns on the relief sought by a prisoner, and it prevents prisoners from seeking compensatory damages for violations of federal law where no physical injury is alleged. *See Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (per curiam). Despite the limitations imposed by § 1997e(e), a prisoner can, absent a showing of physical injury, pursue punitive or nominal damages based upon a violation of his constitutional rights. *See Hutchins v. McDaniels*, 512 F.3d 193, 197-98 (5th Cir. 2007)(per curiam).

Plaintiff sought nominal, compensatory and punitive damages, as well as declaratory and injunctive relief. To the extent that the plaintiff sought compensatory damages on his retaliation and equal protection claims, his claims are barred by § 1997e(e) because he did not allege that he suffered a physical injury. *See Patel v. Santana*, 348 Fed.Appx. 974 (5th Cir. 2009).[4]

---

[4] Although § 1997e(e) bars the plaintiff's claims for compensatory damages, it does not bar his other requests for monetary relief, punitive and nominal damages. *Hutchins v. McDaniels*, 512 F.3d at 198.

### III. Failure to Exhaust Administrative Remedies

Defendants moved for summary judgment on the grounds that the plaintiff failed to exhaust available administrative remedies.

### A. Applicable Law

Section 1997e of Title 42 of the United States Code provides in pertinent part as follows:

> (a) Applicability of Administrative Remedies.--No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available administrative remedies before filing a § 1983 suit and is precluded from filing suit while the administrative complaint is pending. *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *abrogated in part* by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (abrogating the holding that a district court may dismiss a civil complaint *sua sponte* for failure to exhaust); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 514 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90-91, 126 S.Ct. 2378, 2386 (2006). Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules. *Id.*, 126 S.Ct.

at 2389-90.  The § 1997e(a) exhaustion requirement is mandatory, irrespective of the forms of relief sought and offered through administrative avenues.  *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir. 2003).

The Prison Litigation Reform Act requires exhaustion of "such administrative remedies as are available."   Nothing in 42 U.S.C. § 1997(e)(a) imposes a "name all defendants" requirement.  *Jones v. Bock*, 549 U.S. 199, 217, 127 S.Ct. 910, 922 (2007).  Exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.  *Id.* at 923.

In *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004), the court stated:

We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation....   But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem.

*Id.* at 522 (internal citation and parenthetical omitted).  In *Johnson* the Fifth Circuit focused on the purpose of the exhaustion requirement, which is to alert prison officials to a problem and to provide officials "'time and opportunity to address complaints internally.'"  *Id.* at 516 (quoting *Porter v. Nussle*, 534 U.S. 516, 525, 122 S.Ct. 983, 988 (2002).  The court held that "a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit."  *Johnson, supra* at 517.   The court distinguished those instances where the plaintiff is complaining about a specific incident from those where he is complaining generally about the conditions of his confinement.  In the former situation, the plaintiff

should be expected to provide details regarding the incident, including who was involved and when it occurred, or at least other available information sufficient to permit an investigation. *Id.* The court reasoned that in most cases, the identity of the wrongdoer-defendant will be known and should be provided because the identity of an alleged wrongdoer may be required in order to provide prison officials meaningful opportunity to resolve a dispute, particularly when a dispute involves a discrete incident. *Id.* at 522.

**B. Analysis**

In this case, the plaintiff identified ARP LSP-2007-1208, ARP-LSP-2007-1695 and ARP LSP-2007-2854 as the three ARPs in which he exhausted available administrative remedies regarding the claims raised in the complaint.[5]

In ARP LSP-2007-1208, the plaintiff complained that Benjamin, Day and Watson refused his request for admission to the vocational school.[6]

In ARP-LSP-2007-1695, the plaintiff complained that Benjamin threatened to have him issued a false disciplinary report unless he dismissed ARP LSP-2007-1208.[7] Plaintiff further complained that Darbonne questioned him about his reasons for refusing to participate in the tier walker program. When the plaintiff offered his explanation, Darbonne noted that the plaintiff had refused to drop the ARP against Benjamin and was refusing to participate in the tier walker program and threatened to get him.

In ARP LSP-2007-2854, the plaintiff restated his claims against Benjamin and

---

[5] Complaint, p. 3.

[6] Defendants' motion for summary judgment, record document number 195-6, pp. 10-13.

[7] *Id.* at 14-18.

Darbonne raised in ARP LSP-2007-1208 and ARP LSP-2007-1695. According to plaintiff's complaints, when he refused Benjamin's requests to dismiss the ARP, he was approached by Guthrie who asked him to dismiss the ARP against Benjamin. When he refused, Guthrie told him that he would be locked up before the sun went down. He was issued a disciplinary report for refusing the tier walker job, but Laborde tore it up and threatened that there was something special in store for him because he refused to dismiss the ARP against Benjamin. Hebert and Jenkins entered the office and asked if he was the inmate they were "hookin up." Jenkins suggested he drop the ARP against Benjamin. Darbonne told him he had one last chance to drop the ARP or he would be locked up. Plaintiff complained that he was then issued a false disciplinary report for drug trafficking and was placed in administrative segregation, and that Darbonne told Laborde that Benjamin said to issue the plaintiff the drug trafficking charge. According to plaintiff Hebert conducted an investigation into his alleged wrongdoing and should have known the disciplinary charges and confidential informant sheets were false because Hebert had issued a drug related disciplinary report to Reed the previous day. Plaintiff complained that Stroud, in his capacity as chairman of the disciplinary board, granted his motion to dismiss the drug trafficking charge and transferred him to Camp D. Plaintiff complained that Stroud did not discipline Hebert or the confidential informants who provided false information regarding his alleged wrongdoing.

In addition, a review of the summary judgment evidence showed that the plaintiff filed disciplinary board appeal number LSP-2007-0493-W in which he complained in part that Taylor issued him a disciplinary report for aggravated sex offense and general prohibited behavior because the letter involved in the disciplinary infraction indicated that

the plaintiff had pending ARPs against other prison officials.[8]  The appeal was denied on August 24, 2007.[9]

These ARPs and disciplinary appeal were sufficient to provide prison officials with a meaningful opportunity to address the problem which forms the basis of the plaintiff's equal protection claim against Benjamin and his retaliation claims against Laborde and Taylor.  On the other hand, none of the ARPs identified by the plaintiff provide prison officials with sufficient notice of his claims against Barrere, Voohries, Sterling, Tillman and Stroud which forms the basis of his retaliation claims against them.

The summary judgment evidence also showed that the plaintiff filed ARP LSP-2007-3688 in which he complained that on November 10, 2007, Capt. Stanacker[10] told him that if he did not drop ARP LSP-2007-2854, his property would be lost.[11]  According to the affidavit of Rhonda Weldon[12], on February 21, 2008, the date the administrative record was filed in compliance with the court's 30 Day Stay Order, ARP LSP-2007-3688 was backlogged.

The Administrative Remedy Procedure is commenced when the inmate sends a letter to the warden briefly setting out the basis for his claim and the relief sought.  La.

---

[8] Record document number 195-1, pp. 2-12; record document number 195-2, pp.1-9.

[9] Record document number 195-1 at 2.

[10] In the complaint, the plaintiff alleged that Capt. Stammriech approached him on November 10, 2007.  It is apparent that the person identified as Capt. Stanacker in the ARP is in fact the defendant identified as Capt. Stammriech in the complaint.

[11] Record document number 195-6, p. 25.

[12] *Id.* at 1-2.

Admin. Code, tit. 22, pt. I, § 325 G.1. The warden has 40 days from the date the request is received to respond at the first step. *Id.* An inmate dissatisfied with the first step response may appeal to the Secretary of the Department of Public Safety and Corrections. *Id.* at G.2. A final decision will be made by the Secretary and the inmate will be notified within 45 days of receipt. *Id.*

The record evidence supports a finding that the plaintiff's administrative grievance, signed on November 11, 2007, was backlogged at the time he filed his civil rights complaint and even if it was accepted into the ARP system for processing after Weldon filed her affidavit on February 21, 2008, it could not have been exhausted at the time he amended his complaint to add Stammriech as a defendant on March 21, 2008.

In conclusion, the summary judgment evidence supports a finding that the plaintiff failed to exhaust available administrative remedies before filing suit regarding his claims against defendants Todd Barrere, David Voorhies, Jr., Harold Sterling, James Tillman and Louis Stroud.[13]

## IV. Retaliation Claims

Plaintiff alleged that he was issued false disciplinary reports by Capt. Laborde and

---

[13] Plaintiff alleged that the defendants took the following actions in retaliation for his refusal to dismiss the administrative grievances against Benjamin: (1) he was issued false disciplinary reports by Lt. Barrere and Lt. Voorhies on December 13, 2007, (2) he was denied due process during disciplinary hearings conducted by Lt. Col. Sterling and Maj. Tillman regarding disciplinary reports issued by Taylor on July 6 and disciplinary reports issued by Lt. Barrere and Lt. Voorhies on December 13, (3) on June 20, 2007, Lt. Col. Stroud transferred him to minimum security farm line, and (4) Capt. Stammreich lost or destroyed his property.

Taylor on June 5 and July 6, respectively, in retaliation for his refusing to dismiss the administrative grievances against Benjamin.

## A. Applicable Law

Prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts, or for complaining through proper channels about a guard's misconduct. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). However, claims of retaliation from prison inmates are regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions. *Woods*, 60 F.3d at 1166.

To prevail on a claim of retaliation, a prisoner must establish four elements (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris*, 449 F.3d at 684; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).

If an inmate is unable to point to a specific constitutional right that has been violated, then the claim will fail as a matter of law. *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right); *Woods*, 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than his personal belief that he is the victim of retaliation. *Jones*, 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299,310 (5th Cir. 1997). To demonstrate the requisite retaliatory intent on the defendants' part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60

F.3d at 1166. Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *Johnson*, 110 F.3d at 310; *Woods*, 60 F.3d at 1166. In addition, the complained-of adverse action must be more than *de minimis* to support a claim of retaliation in the prison context. *Morris*, 449 F.3d at 684-85; *Hart*, 343 F.3d at 764.

The purpose of allowing inmates retaliation claims under 42 U.S.C. § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights. *Morris*, 449 F.3d at 686 (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n. 10, 118 S.Ct. 1584 (1998)). Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris*, 449 F.3d at 686. *De minimis* acts that would not deter an ordinary person from further exercise of his rights do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* Thus, an inmate's job transfer from the commissary to the kitchen was *de minimis*, while his transfer to a more dangerous prison was not. *Id.* at 687; *see also Bibbs v. Early*, 541 F.3d 267, 271-72 (5th Cir. 2008) (subjecting inmate to below-freezing temperatures for more than four hours during each of four consecutive nights was more than *de minimis*).

## B. Analysis

Plaintiff alleged the following chronology of events from which he argued retaliation by Taylor and Laborde may plausibly be inferred.[14]

---

[14] Although the plaintiff's claims against Barrere, Voorhies, Sterling, Tillman and Stroud are subject to dismissal for failure to exhaust administrative remedies, the plaintiff's allegations against them are relevant insofar as the allegations support his chronology of
(continued...)

In July 2006, he was issued a disciplinary report for bribing, influencing or coercing an employee in violation of Rule 30H to which he entered a guilty plea. As a result, he was removed from the vocational school. Several months later, he asked Day to allow him to once again attend vocational school. Day responded that she would place him on the back log list but that Benjamin had ordered her not to admit him to the vocational school. When he asked Benjamin to admit him to vocational school Benjamin told him that he did not like him and would not order Day to admit him to the vocational school. Benjamin cursed at him and called him a "spoiled little white boy." On April 9, 2007, he filed ARP LSP-2007-1208 complaining that Benjamin and Day refused to admit him to vocational school.

On June 1, 2007, Benjamin called him into his office and threatened to have a female employee issue him a false disciplinary report for an aggravate sex offense if he did not dismiss ARP LSP-2007-1208. On the same day, Darbonne asked him why he refused the tier walker job. When he explained that he was not an inmate guard or a psychologist Darbonne threatened to get him for refusing to accept the tier worker job and to dismiss the ARP against Benjamin. On June 2, 2007, he filed ARP LSP-2007-1695 complaining that Benjamin and Darbonne had threatened him on June 1.

On June 5, 2007, he reported to Benjamin's office and was asked to dismiss ARP LSP-2007-1208. When he refused to dismiss the ARP he was ordered to dismiss it. When he refused a second time he was threatened with disciplinary action. Capt. Guthrie approached him and asked him to dismiss the ARP. When he refused, Capt. Guthrie threatened to place him in administrative lockdown.

On June 5, 2007, he appeared before a disciplinary board on disciplinary charges for refusing to participate in tier walker training. Capt. Laborde tore up the disciplinary report and stated that he had something special in store for him because he refused to dismiss the ARP. Darbonne told him that he had one more opportunity to dismiss the ARP or he would be issued a disciplinary report. When he refused to dismiss the ARP, Darbonne instructed Laborde to issue him a disciplinary report for drug trafficking.

He appeared before the disciplinary board on the drug trafficking charges and filed a motion for an investigation. The motion was granted and the investigation was conducted by Lt. Hebert. The disciplinary report was supplemented with two confidential informant sheets. On June 20, 2007, Lt. Col. Stroud dismissed the disciplinary report and ordered his transfer to Camp D medium security farm line.

On July 6, 2007, he was issued a false disciplinary report by Taylor. Lt. Col. Sterling conducted a disciplinary board hearing on the disciplinary

---

[14](...continued)
events from which retaliation may plausibly be inferred against Taylor and Laborde.

report issued by Taylor. He was found guilty of the disciplinary charges even though there was insufficient evidence to support the decision. He appealed the decision of the disciplinary board which was granted and the aggravated sex offense charge was expunged from his record.

On December 13, 2007, Lt. Barrere asked him to dismiss the ARP against Benjamin. Lt. Barrere then accused him of putting a package in his mouth and swallowing it. On that same day, he was issued a disciplinary report by Lt. Voorhies for possession of contraband, defiance, aggravated disobedience and general prohibited behavior. He was found guilty of the disciplinary charges by Maj. Tillman even though there was insufficient evidence to support the decision.

Stammriech threatened that if he did not drop the ARP against Benjamin his property would be lost or stolen. Plaintiff has not seen his property since he was threatened by Stammriech.

See, complaints, record document numbers 1, 15, 16, 17, 19 and 26.

### 1. Retaliation Claim against Michael Laborde

The summary judgment evidence showed that on June 5, 2007, Laborde issued the plaintiff a disciplinary report for violation of Rule 30-e, General Prohibited Behavior.[15] The disciplinary report stated that the plaintiff was placed in administrative segregation pending an investigation into drug trafficking on the West Yard.[16] The summary judgment evidence showed that the disciplinary board ordered an investigation into the incident,[17] the disciplinary board dismissed the charges due to a discrepancy regarding the date the drug transaction was to have occurred,[18] and the plaintiff was administratively transferred to

---

[15] Record document number 194-2, p. 14.

[16] *Id.*

[17] *Id.* at 18.

[18] *Id.*; Affidavit Michael Laborde, record document number 192-2.

another housing unit.[19]

The law is clear that in response to a motion for summary judgment, the plaintiff must produce evidence sufficient to create a triable issue as to *all* essential elements of his claim. *Celotex*, 477 U.S. at 321-23. In the instant case, the plaintiff's evidence fails to create a triable fact issue that he suffered an actual injury caused by the alleged retaliation.

In *Hart,* the Fifth Circuit affirmed dismissal of the retaliation claims against the disciplinary board members but reversed the trial court's grant of summary judgment in favor of the prison officer who wrote the allegedly retaliatory disciplinary charge. The Fifth Circuit found that the resulting disciplinary sentence, "27 days of commissary and cell restrictions," *id.* at 763, were more than *de minimis* and that a cognizable retaliation claim had therefore been stated against the officer who filed the disciplinary charge.

Here, the disciplinary charges were dismissed, and no penalties were imposed. Courts have held that the filing of a single, later-dismissed disciplinary charge against an inmate, even if taken with a retaliatory motive, is insufficient to qualify as more than *de minimis*. *See, e.g., Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) (holding that "[a] single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action"); *Starr v. Dube*, 334 Fed. Appx. 341, 342-43 (1st Cir. 2009) (per curiam) (same). Laborde did not order the plaintiff's administrative transfer to another housing unit. Moreover, even if Laborde was held to be responsible for the plaintiff's administrative transfer to Camp D, the transfer to Camp D was *de minimis.*

---

[19] *Id.*

**2. Retaliation Claim against Rachel Taylor**

Plaintiff alleged that Taylor issued him a false disciplinary report in retaliation for filing and refusing to dismiss ARP LSP-2007-1208.[20]

The summary judgment evidence showed that on July 6, 2007, Taylor issued the plaintiff a disciplinary report for aggravated sex offense and general prohibited behavior in violation of disciplinary rules 21 and 30H.[21] In the disciplinary report Taylor accused the plaintiff of entering her office without knocking, handing her a letter, telling her not to tell anyone, and instructing her to put the letter in her pocket.[22] According to the disciplinary report, after Taylor read the letter which "contained sexual conduct" and contact information, she immediately notified Maj. Richardson and the letter was given to security.[23]

The summary judgment evidence showed that on July 10, 2007, the plaintiff was found guilty of the disciplinary charges and was sentenced to a custody change to Maximum-Extended Lockdown.[24] The summary judgment evidence showed that the plaintiff appealed the decision of the disciplinary board to the Warden in which he argued, among other things, that the report was issued in retaliation due to the contents of the letter containing information regarding a pending ARP.[25] The appeal was denied with instructions

---

[20] Amended Complaint, record document number 19, p. 1.

[21]  Record document number 195, p. 6.

[22] *Id.*

[23] *Id.*

[24] *Id.*; record document number 195-3, at 10.

[25] Record document number 195-1 at 2; record document number 195-2 at 1.

to void the Rule 21 aggravated sex offense violation.[26]  Plaintiff appealed the decision of the Warden to the Secretary.[27]  The appeal was denied.[28]  Plaintiff's sentence was affirmed.[29]

Plaintiff does not dispute that on July 6, he entered Taylor's office and gave her what he believed was a mental health request.[30]  Plaintiff contends that he either mistakenly gave Taylor a letter he had written to a female friend or it fell from his pocket and Taylor "gained possession of the letter."[31]

The summary judgment evidence showed that in the letter, the plaintiff stated that he filed an ARP about the tier walker program in an effort to get the program shut down.[32] The summary judgment evidence showed that the plaintiff complained about the tier walker program in ARP LSP-2007-1695, not LSP-2007-1208.[33]

The summary judgment evidence showed that the plaintiff was interviewed by security personnel about the letter outside of Taylor's presence.[34]  The summary judgment evidence showed that Taylor was then called into the office and asked to confirm whether

---

[26] Record document number 195-1 at 2.

[27] Record document number 195-3 at 6.

[28] *Id.* at 10.

[29] *Id.*

[30] Plaintiff's affidavit, record document number 210, p. 4.

[31] *Id.*

[32] Record document number 195-2 at 8; record document number 208-3 at 5.

[33] Record document number 6-2, pp. 1-10.

[34] Plaintiff's affidavit, record document number 210 at 4-5.

the plaintiff had given her the letter at issue and to confirm that the letter in their possession was the letter given to her by the plaintiff.[35] Taylor responded in the affirmative to both questions.[36]

Plaintiff argued that Hukins instructed Taylor to prepare a disciplinary report for a violation of Rule 21 and Rule 30H and told her that someone at Main Prison wanted the plaintiff at Camp J.[37] Taylor denied that Hukins instructed her to file a disciplinary report against the plaintiff.[38]

There is no evidence in the record that at the time Taylor issued the plaintiff the July 6 disciplinary report she was aware that the plaintiff had filed LSP-2007-1208. Moreover, the plaintiff failed to demonstrate that the asserted harm, i.e., the issuance of the July 6 disciplinary report, would not have occurred but for the alleged retaliatory motive. He has not controverted the summary judgment evidence that he entered Taylor's office and handed her the letter and it was that action that precipitated the issuance of the disciplinary report.

These facts, taken together, fail to create a triable fact issue "that [Smith] suffered a qualifying adverse retaliatory act." *Morris*, 449 F.3d at 684 .

### V. Equal Protection Claim

Plaintiff alleged that Day is the principal of the education programs at the state penitentiary and that Day and Warden Benjamin would not permit him to attend vocational

---

[35] *Id.* at 5.

[36] *Id.*

[37] *Id.*

[38] Taylor's Answer to Interrogatory Number 8, record document number 208-3 at 14.

school in violation of his equal protection rights. Specifically, the plaintiff alleged that he requested permission from Day to attend vocational school. Day responded that she would place his name on the backlog list but that Warden Benjamin had ordered her not to admit him to the vocational school. Plaintiff claims that when he asked Warden Benjamin to permit his admission to vocational school, Warden Benjamin told him that he did not like him and would not order Day to admit him to the vocational school, and then Warden Benjamin cursed at him and called him a "spoiled little white boy."

To prove a cause of action under § 1983 based on a violation of equal protection, the plaintiff must demonstrate that the officials acted with a discriminatory purpose. *Woods v. Edwards*, 51 F.3d 577 (5th Cir.), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800 (1996). Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group. *Id.* A violation of the equal protection clause occurs only when the governmental action in question classifies or distinguishes between two or more relevant persons or groups. *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988).

The summary judgment evidence showed that inmates who want to participate in vocational programs must submit their requests to the education department.[39] Enrollment in vocational programs is based upon class size, availability and the number of inmates who have applied to particular vocation.[40] Generally, inmates must wait a substantial

---

[39] Affidavit of Kevin Benjamin, record document number 192-1.

[40] *Id.*

amount of time to be placed in educational programs.[41]   Benjamin does not review applications for admission and has no control over whether an inmate gets admitted to a course.[42]  The summary judgment evidence showed that in August 2006, the plaintiff was removed from horticulture class after being he pled guilty to a disciplinary infraction .[43]

Plaintiff contends that he asked Benjamin to instruct Day to admit him into vocational school and Benjamin responded that he would not because he did not like the plaintiff.[44]  Plaintiff contends that Benjamin then told him he was a "spoiled little white boy" and he would show him that he would not get into school.[45]  Benjamin denied making any reference to race when speaking to the plaintiff.[46]

There is no evidence in the record that Benjamin had any authority to admit or deny the plaintiff admission to vocational school.  There is no summary judgment evidence that the plaintiff's placement on a wait list for admission to vocational school was because of his race.  Defendant is entitled to summary judgment as a matter of law.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the plaintiff's motion for

---

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] Complaint, record document number 1, p. 7.

[45] Plaintiff's Affidavit, record document number 210, p. 2.

[46] Benjamin's Answer to Interrogatory Number 9, record document number 208-5 at 54.

summary judgment be denied, the defendants' motion for summary judgment be granted and this action be dismissed.

Signed in Baton Rouge, Louisiana, on August 26, 2011.

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**